UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 ------------------------------------------------------
CHERYL CLARKE, ESQ.,

                         Plaintiff,

        -against-

NASSAU HEALTH CARE CORPORATION,
SHARON POPPER, in her official and individual
capacity, and KARLE KAMPE, in his official and
individual capacity,

                        Defendants.

 --------------------------------------------------------X

**MEMORANDUM AND ORDER**
08-CV-2400(DRH)(GRB)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Blvd.
Hempstead, New York 11550
By:   Frederick K. Brewington, Esq.

**For the Defendants:**
**CLIFTON BUDD & DEMARIA, LLP**
420 Lexington Avenue
New York, New York 10170
By:   Sheryl Ann Orwel, Esq.

**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
By:   Brian J. Clark, Esq.

1

**HURLEY, Senior District Judge:**

Plaintiff, Cheryl Clarke ("Clarke" or "plaintiff") commenced this action against defendants Nassau Health Care Corporation ("NHCC"), Sharron Popper ("Popper"), and Karle Kampe ("Kampe") (collectively "defendants") asserting claims of race-based discrimination and retaliatory employment practices in violation of Title VII of 42 U.S.C. § 2000(e) (Title VII), 42 U.S.C. § 1983, 42 U.S.C. § 1981, and New York's Human Rights Law, Executive Law § 296. (Sec. Am. Compl. ¶ 1, as Defs.' Ex. A.) Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons set forth below, the defendants' motion is granted.

## BACKGROUND

The following facts, drawn from the parties' local Rule 56.1 statements, the pleadings, and prior decisions in this case, are undisputed unless otherwise noted.

*Procedural History*

In an Order dated June 13, 2008, this Court, adopting Magistrate Judge Orenstein's Report and Recommendation in its entirety, granted defendants' motion pursuant to Federal Rule of Civil Procedure 21 to sever into separate actions the claims of seven plaintiffs, including Clarke, each of whom claimed that defendants had discriminated against him or her on the basis of race. (*See* 06-CV-4757, Docket No. 64 (Memorandum and Order, dated June 13, 2008)). In the same opinion, the Court also dismissed plaintiffs' Title VI claims in their entirety and their Title VII claims against all of the individual defendants, including defendants Popper and Kampe. (*Id.* at 14-15.) In addition, the Court dismissed Clarke's procedural due process claim. (*Id.* at 13.)

*Plaintiff's Employment at NHCC*

Plaintiff is "an African American female who started working at defendant NHCC as an Associate General Counsel in March of 2001" under the civil service category "Attorney III," and with a starting salary of $80,000.  (Pl.'s R. 56.1 Counterstmt. ¶¶ 1-2; Defs.' R. 56.1 Stmt. ¶ 6.)  Plaintiff's primary responsibilities included "(a) labor and employment law matters, including the review and investigation of discrimination complaints; (b) work in connection with the NHCC's numerous outside contracts; (c) corporate compliance reporting[1] and coordination of the Faculty Practice Plan in accordance with the Corporate Integrity Agreement[2] ("CIA"); and (d) legal issues related to patient care."  (Defs.' R. 56.1 Stmt. ¶ 7.)  At the start of her employment, the Legal Department had three other attorneys: Louis Savinetti ("Savinetti"), the General Counsel, Kevin O'Mara ("O'Mara"), the Deputy General Counsel, and Brian Baker ("Baker"), an Associate General Counsel.  (Pl.'s R. 56.1 Counterstmt. ¶ 3.)  Baker, a White employee who possessed the same job title and civil service category as plaintiff, commenced his employment one month prior to plaintiff with a starting salary of $75,000.  Another Caucasian employee, Meyer, was also hired as an Associate General Counsel one year after plaintiff at a starting salary of $65,000.  (Defs.' R. 56.1 Stmt. ¶¶ 9-11.)

---

[1] Plaintiff disputes "that she was in charge of 'corporate compliance reporting,' which [she claims] is a broad statement of her direct responsibilities under compliance," and asserts that, "Judge Driscoll, the chief compliance officer of Defendant NHCC, specified [her] compliance responsibilities."  (Pl.'s R. 56.1 Stmt. ¶ 7.)

[2] "The CIA was an agreement between the United States Office of the Inspector General ("OIG") and the NHCC to settle violations by the NHCC's Department of Psychiatry of federal medical billing guidelines. …Pursuant to the terms of the CIA, failure to strictly adhere to its terms could lead to, among other things, a fine of $1,000 per day for each day of non-compliance."  (Defs.' R. 56.1 Stmt.¶¶ 29, 31.)

"In March 2002, Savinetti left the General Counsel position" and O'Mara was named acting General Counsel, a position he occupied until his departure in October of 2002.  (*Id.* ¶¶ 18-19.)  As a result, "there was a vacancy for the position of General Counsel" and NHCC received resumes from various applicants including Clarke, Baker, and Sharon Popper who previously had not been employed by NHCC.  (*Id.* ¶¶ 20, 22.) Ultimately, Richard Turan, an NHCC administrator, decided to hire Popper "based on her prior experience . . . as the General Counsel for ten years at a Medical Center," although plaintiff claims that NHCC hired defendant Popper "based on its racial animus towards African-American employees and [intended] to prevent [her] from professionally advancing."  ((*Id.* ¶ 26; Pl.'s R. 56.1 Stmt. ¶ 26.)  "Popper commenced employment in January 2003 and both [plaintiff] and Baker reported to [her]."  (Defs.' R. 56.1 Stmt. ¶ 26.)

*Plaintiff's Performance and Ultimate Termination*

Defendants offer two specific instances of plaintiff's deficient job performance. First, defendants assert that "[a]s part of her compliance work, Plaintiff was responsible for coordinating the training of the NHCC's faculty and employees in accordance with the CIA," and that plaintiff neglected this responsibility.  (*Id.* ¶¶ 28, 32, 38.) Consequently, in October of 2003 a review of NHCC's corporate compliance training programs showed that NHCC was not in compliance with the CIA and "Popper met with plaintiff to discuss the report of non-compliance."  (*Id.* ¶ 33.)  Plaintiff, however, disputes that she was at fault and contends that the meeting was called only "to humiliate [her] by removing key responsibilities from [her] and re-assigning them to a Caucasian employee."  (Pl's. R. 56.1 Stmt. ¶ 33.)  Thereafter, the task of putting the hospital in

compliance with the CIA was assigned to Lana Copeta, a non-attorney employed in the Academic Affairs Department.  (Defs.' R. 56.1 Stmt. ¶ 34.)

Defendants also contend that in March of 2004 Clarke "drafted a contract in such a manner that its plain meaning prevented the NHCC from paying $250,000 to one of its vendors for services rendered" and that thereafter plaintiff was insubordinate in refusing to sign an affidavit that purportedly would have rectified the error.  (Defs.' R. 56.1 Stmt. ¶¶ 39-42.)  Plaintiff, however, denies this allegation claiming "[i]ssues surrounding vendors and disbursements to vendors were the responsibility of the Finance Department, not [her]."  (Pl's. R. 56.1 Stmt. ¶ 40.)  Plaintiff claims she refused to sign the affidavits because "they were not used to explain a drafting error, but rather were used to accuse [her] of sole wrongdoing."  (*Id*. ¶ 42.)

Defendants claim that "Plaintiff's job performance deteriorated and [that] Popper was always finding errors in her work," resulting in plaintiff's probation in June of 2005 and ultimate termination in July of 2005, a year after she filed a discrimination complaint with the New York State Department of Human Rights ("NYSDHR") in May 2004. (Defs.' R. 56.1 Stmt. ¶¶ 43-46.)[3]  As a consequence of plaintiff's poor performance, defendants brought 18 formal charges against plaintiff under New York Civil Service Law § 75.  (*Id*. ¶¶ 46-47.)  The charges, each of which is accompanied by a record of the particular event, include: "Inattentive to Duties; Refusal to Respond to Supervisor; Inability to Perform Legal Assignments; Inadequate Legal Drafting Skills; Inadequate Legal Research; Refusal to Respond to Supervisor; Refusal to Follow Supervisor's

---

[3] "Plaintiff's attorney wrote [a letter dated June 27, 2005] to Defendant Karl Kampe, Executive Director of Nassau County Civil Service Commission, regarding plaintiff's unlawful termination and lack of procedural due process."  (Pl.'s R. 56.1 Counterstmt. ¶ 24.)

Directives; Poor Drafting Skills and Sloppy Work; Failure to Supervise Outside Counsel; Insubordination." (*Id.* ¶ 47.) Plaintiff "concurs with the facts as set forth [under these charges], however, [she] disputes the proposition which has been inferred - that [she] was guilty of said charges." (Pl's. R. 56.1 Stmt. ¶ 47.) Plaintiff also claims that her termination was "because of the unlawful acts of Defendant Popper and administration of Defendant NHCC." (*Id.* ¶ 46.)

According to the opinion of the hearing officer who presided over the Article 75 proceeding, plaintiff and her counsel failed to attend the scheduled evidentiary hearing, however, finding that NHCC had provided substantial evidence, the hearing officer found plaintiff guilty of 16 of the 18 charges and recommended that the plaintiff "be dismissed and discharged from service." (Findings of Fact, Conclusions and Recommendations, dated January 20, 2006, Defs.' Ex. L at 17-18.) Subsequently, plaintiff filed an Article 78 proceeding in Nassau Supreme Court, seeking reinstatement based on a violation of her due process rights, and the state court denied that petition. (Order and Judgment, dated July 6, 2006, Defs.' Ex. N.)

### *DISCUSSION*

### I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994.) The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986.)  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c).)

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996.)  The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted.)

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in

their determination of summary judgment motions.  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988.)  Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim.  *Id.* at 210-11.  Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587.)

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000.)  Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994.)  "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985.)  "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

**II. Plaintiff's Discrimination Claim**

**A.  *Legal Standard***

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar "burden- shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence.  This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993.)  Under *McDonnell Douglas* and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent.  *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003.)  The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal."  *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001.)  It is a burden of production, not persuasion, and involves no credibility assessments.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000.)

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted.) The employer's burden of showing a legitimate non-discriminatory reason for its actions

9

is not a particularly steep hurdle.  Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co*., 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons."  *Dister v. Cont'l Grp., Inc*., 859 F.2d 1108, 1116 (2d Cir. 1988.)

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination *vel non*." See *Reeves*, 530 U.S. at 143.  To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co*., 853 F.2d 151, 154-55 (2d Cir. 1988.)  "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.  Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII." *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human

Rights Law "is governed by the same standards as his federal claim".)  "Accordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.*

**B.** *Application to Plaintiff's Discrimination Claim*

Here, defendants concede that plaintiff has established three elements of her *prima facie* case: (1) she is part of a protected class; (2) she was qualified for her position, and (3) she suffered an adverse employment action when she was terminated.  Plaintiff also claims that she suffered adverse actions because NHCC failed to promote her to general counsel and failed to pay her a salary commensurate with her responsibilities, although defendants do not concede those points.  As will be shown below, however, plaintiff cannot establish her discrimination claim because she has not provided sufficient evidence that any of the alleged adverse actions occurred under circumstances giving rise to an inference of discriminatory intent.

*Inference of Discrimination*

A Title VII plaintiff may establish the last element of the *prima facie* case in a number of different ways depending on the specific facts of the case.  *See Abdu-Brisson v. Delta Air-Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).  Here, plaintiff claims that discrimination can be inferred from a "history or pattern of adverse treatment" of African Americans.  (Pl.'s Mem. in Opp'n to Summ. J. at 5.)  However, plaintiff's list of cases that she claims prove that "NHCC has a documented history of adverse treatment towards African-Americans" is misleading.  (*Id*. at 5-6).  First of all, most of the cases plaintiff cites are either pending or have resulted in favorable rulings for the defendant NHCC.  In addition, the plaintiff cites cases relating to discrimination based on religion and age that have no bearing on whether defendants treated plaintiff discriminatorily based on race.

In fact, only two of the cited cases involved dispositive motions that were decided in favor of the plaintiff, and these cases involved plaintiffs who raised claims of discrimination based on disability, age, and Filipino ethnicity.  (*See Hamad v. Nassau Cnty. Med. Ctr.*, 191 F. Supp. 2d 286 (E.D.N.Y. 2000); *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154 (E.D.N.Y. 1998)).  As a result, none of these cases support an inference that plaintiff was a victim of discrimination based on her race.

Additionally, plaintiff's claim that the hospital's "failure to…compensate her for her performance could be reasonably attributable to the racial animus towards African-American employees at Defendant Hospital" is wholly conclusory.  (Pl.'s Mem. in Opp'n at 9.)  Plaintiff claims that "[h]er position was much closer to that of General Counsel than of a staff attorney," but fails to provide any evidence to substantiate a claim that she should have been paid similarly to Savinetti or Popper.  (*Id.*)  Moreover, she concedes she was paid more than Baker and Meyer, Caucasians who like plaintiff held the position of associate counsel.  (Pl.'s R. 56.1 Stmt. ¶¶ 9, 11.)  Plaintiff's claim is based solely on her subjective assessment of what her salary should have been, which without substantiating proof, is insufficient to establish discriminatory intent.

Furthermore, plaintiff tries without success to establish an inference of race-based discrimination by suggesting that NHCC discriminated against her because of her "involvement with the Office of Diversity" (" O. D."), the department within NHCC responsible for addressing employee discrimination complaints.  (Pl.'s Mem. in Opp'n to Summ. J. at 8; Clarke Decl. ¶ 39.)  In order to support this claim, plaintiff cites two incidents that she suggests reflect that NHCC had a negative attitude toward the O. D. First, plaintiff refers to a meeting at the O. D. where Popper "read Cliff Johnson the 'Riot

Act' . . . [as a] 'reminder' to those perceived to be associated with the [O. D.] to 'don't make trouble or else.'  (Pl.'s Mem. in Opp'n to Summ. J. at 8.)  In addition, she refers to a comment from Savinetti to "bring the Diversity Office in compliance with the rest of the Hospital because they (Defendant Hospital) want to get rid of it," which she claims "demonstrates the intent of the administrators at Defendant NHCC to destroy the [O. D.] and continue fostering an environment of hostility and non-tolerance"  (*Id*. at 7.)  Even if, however, a reasonable fact-finder could find that NHCC had a negative attitude toward the O. D., plaintiff has provided no evidence to suggest that this treatment of the O. D., whose job was to handle all types of discrimination claims, stemmed from any racial animus toward African Americans specifically.  (Clark Decl. ¶ 39 ("The O. D. had the primary function of interceding on behalf of the employees at all facilities of the NHCC  . . . who were experiencing discrimination of some form within the workplace.").)  As a result, the evidence presented on this issue fails to establish that NHCC discriminated against plaintiff because of her race.

Similarly, plaintiff's allegation that "defendant Popper…made a suspect comment to [her] stating, 'you are wearing too many hats, is it your culture, or the fact that you are a woman, that you won't tell me that you have too much work?' " does not establish discriminatory intent.  (Pl.'s Mem. in Opp'n to Summ. J. at 14.)  Defendant Popper's isolated remark lacks the causal connection to any of NHCC's alleged adverse actions toward plaintiff.  *See Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 56 (2d Cir.1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the

13

remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."). Here, plaintiff has not explained how this comment can be legitimately tied to any of the alleged adverse actions, and as a result, no reasonable trier of fact could infer discriminatory intent.

Finally, plaintiff cannot make out a discrimination claim based on NHCC's decision to hire Popper as General Counsel instead of her. Even assuming for purposes of this discussion that NHCC's decision to hire a White person over Popper provides a prima facie inference of discrimination, plaintiff is unable to prove pretext because she cannot defeat defendants' articulated non-discriminatory reason for hiring Popper over plaintiff, namely that Popper had ten years of experience as general counsel at a medical center. In order to establish a "credentials-based finding of pretext," the plaintiff must show that her "credentials were…so superior to those of the person selected for promotion so as to make the selection of that person unreasonable." *Lomotey v. Connecticut-Dep't of Transp.*, 355 F. App'x 478, 481 (2d Cir. 2009). Here, although plaintiff demonstrates that she has a fair amount of legal experience including approximately two years of experience as associate counsel at NHCC, she is unable to show that her credentials were so superior to Popper's to render NHCC's selection of Popper unreasonable. Therefore, the Court dismisses plaintiff's Title VII discrimination claims.

### III. Plaintiff's Retaliation Claim

#### A. Legal Standard

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)).  "In order to present a prima facie case of retaliation under Title VII . . ., a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 100, 205-06 (2d Cir. 2006) (internal quotation and citation omitted).  In addition, the Supreme Court recently clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under §2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit.  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234, *16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*.  *See Terry*, 336 F.3d at 141.  Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, nondiscriminatory reason for the adverse action.  If it does so, then the burden shifts back to the [employee] to demonstrate pretext."  *Slattery v. Swiss Reinsurance. Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001).

**B.** *Application to Plaintiff's Retaliation Claim*

Here, defendants concede that Clarke engaged in protected activity when she filed a complaint with the NYSDHR in May 2004, but assert that "[t]he record is devoid of any evidence that any adverse employment action was taken against Plaintiff for her alleged complaint." (Defs.' Mem. in Supp. of Summ. J. at 21.)  The Court agrees that plaintiff cannot establish that her May 2004 complaint was causally connected to her termination over a year later in July of 2005.  *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 459 (E.D.N.Y. 2011) (holding a one year lapse between protected activity and alleged retaliation is too attenuated to support retaliation claim); *see also Thomas v. City of New York*, 2013 WL 3753557, at *11 (E.D.N.Y. July 12, 2013) ("Courts in this Circuit have varied widely as to the length of time between the protected activity and the adverse action that is sufficient to break the chain of causation as a matter of law…*but it is the rare case that finds an issue of fact as to causation when more than a year rather than months have gone by*.") (emphasis added.)

In order to counter a dismissal based on this obvious lapse of time, plaintiff argues that "[t]here is a showing of continuous discrimination towards Ms. Clarke upon her filing with [the] NYSDHR," but the evidence plaintiff cites does not support this claim. (Pl.'s Mem. in Opp'n to Summ. J at 11.)  Plaintiff cites to "a memo…from Defendant Popper dated June 17, 2004 'reminding' [plaintiff] of her attorney-client duties," emails from Popper reminding plaintiff to swipe her time card, instances where Popper required plaintiff to provide updates on her work load, and Popper's placement of plaintiff on probation. (Pl.'s Mem. in Opp'n to Summ. J. at 12-13.)  Plaintiff fails to

explain, however, how a reasonable trier of fact could infer from these facts that plaintiff's complaint to the NYSDHR was a but for cause of her termination. Furthermore, plaintiff has offered no evidence to show that NHCC's actions in 2004 and 2005 culminating in plaintiff's termination were the result of a retaliatory motive rather than plaintiff's poor job performance.  In light of the above, plaintiff's Title VII retaliation claim is dismissed.

**IV. Plaintiff's 42 U.S.C. §§ 1981 and 1983 Claims**

   **A.  § 1981 Claims**

42 U.S.C. § 1981 prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d.Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000).  The *McDonnell Douglas* analysis applies to both Title VII discrimination claims and claims under § 1981.  *Patterson*, 375 F.3d at 225 ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.").  As a result, because plaintiff has not provided sufficient evidence to establish discrimination under Title VII, her claims under § 1981 must fail as well.

Similarly, retaliation claims under § 1981 are generally analyzed in the same manner as under Title VII.  *Acosta v. City of New York*, 2012 WL 1506954 at *8

(S.D.N.Y. Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability.").  Since this Court has dismissed plaintiff's retaliation claim under Title VII, her § 1981 retaliation claim is also dismissed.

### B.  First and Fourteenth Amendment Claims

In order to make out a First Amendment retaliation claim, plaintiff alleges that "she suffered closely-timed, adverse employment acts (harassment, disparately strict treatment, and unjustified termination by the defendants), immediately following her expression of speech in opposition to racial discrimination."  (Pl.'s Mem. in Opp'n to Summ. J. at 16.)

A plaintiff alleging First Amendment retaliation must demonstrate that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (internal citation and quotation marks omitted).  Plaintiff contends that she spoke regarding matters of public concern when she made comments in 2001 addressing the need to restructure the O. D., comments in March 2002 suggesting that the O. D. "belonged under the Human Resources Department because [it] needed to operate independently of the legal department," and similar comments about the O. D. in 2004.  (Clarke Decl. ¶¶ 50-51, 54.)  Clarke also claims that she engaged in protected speech in 2002 when she told Turan that he needed to hire more African Americans, and in January of 2004 when

she told Popper that she "did not like the way Blacks [were] treated at NHCC."  (*Id.* ¶¶ 52-53.)

Similar to her Title VII retaliation claim, plaintiff cannot establish the causal nexus required to establish her First Amendment retaliation claim.  "To establish causation, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action."  *Nagle v. Marron*, 663 F.3d 100, 109 (2d Cir. 2011) (internal citations and quotation marks omitted).  "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.  *Mandell*, 316 F.3d at 383 (internal citation and quotation marks omitted).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  Nevertheless, "[a] plaintiff "may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary."  *Deters v. Lafuente*, 368 F.3d 185, 190 (2d Cir. 2004) (citing *Morris v. Lindau*, 196 F.3d 102, 111 (2d. Cir. 1999)).

Here, plaintiff attempts to establish causation solely based on temporal proximity, but she does not describe the temporal relationship between the speech and the alleged adverse actions with any specificity.  In particular, she only is able to provide a particular date for two incidents of speech that she claims occurred in March of 2002 and January

of 2004.  Moreover, these incidents are so far removed in time from any of the alleged

adverse actions that the temporal relationship between them cannot establish causation

absent any other information arguably suggesting a retaliatory motive.  *See Espinal v.*

*Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that the "Court [may] exercise its

judgment about the permissible inferences that can be drawn from temporal proximity in

the context of particular cases").  For example, Clarke's March 2002 comment to Turan

that NHCC should move the O. D. to the Human Resources Department occurred at least

six months before NHCC decided to hire Popper, and there is no evidence that this

comment was met with any resistance from NHCC or that it would have influenced

NHCC to take retaliatory action against Clarke.  Similarly, a reasonable fact finder could

not find that the January 2004 speech caused Clarke's termination over a year and a half

later in July of 2005.  *See Mandell*, 316 F.3d at 384 (noting that "[i]t makes logical sense

that if an employer wishes to retaliate by firing an employee, he is likely to do so soon

after the event").  As a result, plaintiff's First Amendment retaliation claim is dismissed.

In terms of how the Court should analyze plaintiff's Equal Protection claim as

compared to her Title VII claim, the plaintiff concedes that "Courts apply the same legal

elements and burden-shifting analysis for a Title VII race discrimination claim as they do

for [race-based] discrimination claims against a public health corporation or its

supervisory employees under 42 U.S.C. § 1983 (14th Amendment/Equal Protection

Clause)."  (Pl.'s Mem. in Opp'n to Summ. J. at 16.)  Accordingly, because plaintiff's

Title VII claim was dismissed her Equal Protection claim is also dismissed.  Furthermore,

to the extent plaintiff in her brief intends to argue that she was deprived of procedural due

process, (*See* Pl.'s Mem. in Opp'n at 15), this Court dismissed plaintiff's procedural due

process claims by Order dated June 13, 2008 and plaintiff has provided no reason to revisit that dismissal.  (*See* Mem. and Order, dated June 13, 2008 at 13.)

### *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment pursuant to Rule 56 is granted in its entirety.  Plaintiff's claims under 42 U.S.C. § 2000(e) et. seq. (Title VII), 42 U.S.C. §§ 1981 and 1983, and New York's Human Rights Law, Executive Law § 296 are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York

December 13 2013

_____/s/_____

Denis R. Hurley

United States District Judge

21